Case 6:13-cv-00043  Document 7-2  Filed on 11/14/13 in TXSD  Page 1 of 74

---

## C A P T I O N

---

EX PARTE:

KER'SEAN O. RAMEY                    Cause No. 05-12-7342-A

Applicant

## **APPLICATION FOR WRIT OF HABEAS CORPUS**

24th Judicial District Court          **Offense:** Capital Murder

Jackson County, Texas

                                      **Sentence:** Death Penalty

**Presiding Judge:**
Stephen Williams

**Plea:** Not Guilty

**State's Attorney**:

Robert E. Bell
Criminal District Attorney
115 W. Main Room 205
Edna, Texas 77957
Telephone Number 512-782-7178
State Bar no. 02086200

2

Case 6:13-cv-00043  Document 7-2  Filed on 11/14/13 in TXSD  Page 2 of 74

**TRIAL COURT CAUSE NO. 05-12-7342**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | OF |
| | § | |
| KER'SEAN O. RAMEY | § | JACKSON COUNTY, TEXAS |

**APPLICATION FOR WRIT OF HABEAS CORPUS SEEKING RELIEF FROM CONVICTION AND DEATH PENALTY**

**TO THE HONORABLE COURT:**

NOW COMES KER'SEAN O. RAMEY, (hereafter "Applicant") in the above-styled and -numbered cause, and files this Application for Writ of Habeas Corpus Seeking Relief from Conviction and Death Penalty under Article 11.071 of the Code of Criminal Procedure, and in support of the Application shows:

**I.**
**CONFINEMENT AND RESTRAINT**

Applicant is currently being illegally held in confinement and restrained in his liberty by the Director of the Texas Department of Criminal Justice, Institutional Division. This confinement is pursuant to a conviction for capital murder and sentence of death in the 24th District Court of Jackson County, Texas, Honorable Kemper Stephen Williams, III presiding in cause Number 05-12-7342. The Applicant was sentenced to death January 23, 2007. Clerk's Record (hereafter "TR"), Vol. 1, p. 191. The cause is currently on direct appeal in cause number AP-

1

Filed May 16 20 08
At 11:30 AM/PM
SHARON MATHIS
Clerk District Court
Jackson County, Texas
By _____ Deputy

3

75,678, Court of Criminal Appeals.

## CLAIMS FOR HABEAS CORPUS RELIEF PRESENTED

### CLAIM NUMBER ONE

**APPLICANT WAS DENIED HIS RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION BECAUSE THE TEXAS DEATH PENALTY STATUTE DID NOT GIVE HIS JURY THE OPTION OF IMPOSING A PRISON SENTENCE OF LIFE WITHOUT THE POSSIBILITY OF PAROLE.**

### CLAIM NUMBER TWO

**APPLICANT WAS DENIED HIS RIGHTS UNDER THE FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION BECAUSE THE TEXAS DEATH PENALTY STATUTE DOES NOT PLACE THE BURDEN OF PROOF ON THE STATE TO DISPROVE ANY CIRCUMSTANCE OR CIRCUMSTANCES MITIGATING AGAINST THE DEATH PENALTY.**

### CLAIM NUMBER THREE

**THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE AS TO VENIREPERSON LICERIO, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

### CLAIM NUMBER FOUR

**THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE AS TO VENIREPERSON MARTINEZ, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

4

Case 6:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 4 of 74

## CLAIM NUMBER FIVE

**THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE AS TO VENIREPERSON ALVAREZ, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

## CLAIM NUMBER SIX

**THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE AS TO VENIREPERSON LONG, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

## CLAIM NUMBER SEVEN

**THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE AS TO VENIREPERSON BROWN, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

## CLAIM NUMBER EIGHT

**THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE AS TO VENIREPERSON HAGER, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

## CLAIM NUMBER NINE

**THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE AS TO VENIREPERSON WARREN, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

5

Case 6:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 5 of 74

## CLAIM NUMBER TEN

**THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE AS TO VENIREPERSON PETTY, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

## CLAIM NUMBER ELEVEN

**THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE AS TO VENIREPERSON GILLIG, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

## CLAIM NUMBER TWELVE

**THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE APPLICANT'S CHALLENGE FOR CAUSE AS TO VENIREPERSON GLAWSON, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

## CLAIM NUMBER THIRTEEN

**APPLICANT'S CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN THE STATE REQUESTED AND RECEIVED A JURY SHUFFLE FOR IMPERMISSIBLE RACIALLY DISCRIMINATORY REASONS.**

## CLAIM NUMBER FOURTEEN

**APPLICANT'S AND JUROR STEADHAM-SCOTT'S RIGHTS WERE VIOLATED WHEN THE STATE EXERCISED A PEREMPTORY STRIKE IN A RACIALLY DISCRIMINATORY MANNER.**

Case 6:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 6 of 74

## CLAIM NUMBER FIFTEEN

**APPLICANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT THE JURY SELECTION STAGE OF HIS TRIAL IN VIOLATION OF HIS RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

## CLAIM NUMBER SIXTEEN

**APPLICANT WAS DENIED HIS RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION TO EFFECTIVE ASSISTANCE OF COUNSEL AT PUNISHMENT CAUSING AN UNRELIABLE DETERMINATION OF A SENTENCE OF DEATH.**

## CLAIM NUMBER SEVENTEEN

**THE TRIAL COURT ERRED BY NOT INCUDING THE INSTRUCTIONS AND LESSER INCLUDED OFFENSES REQUESTED BY THE APPLICANT IN THE CHARGE OF THE COURT IN VIOLATION OF APPLICANT'S RIGHT TO DUE PROCESS. (AS PRESENTED IN APPLICANT'S DIRECT APPEAL)**

## CLAIM NUMBER EIGHTEEN

**AT THE TIME DR. JOHN A. STASH PERFORMED THE AUTOPSY ON SAMUEL ROBERTS, HE WAS NOT A QUALIFIED MEDICAL EXAMINER AND THE EVIDENCE GIVEN BY HIM VIOLATED APPLICANT'S RIGHT TO DUE PROCESS. (AS PRESENTED IN APPLICANT'S DIRECT APPEAL)**

## CLAIM NUMBER NINETEEN

**THE TRIAL COURT ERRED IN ADMITTING THE EXPERT TESTIMONY OF RONALD CRUMLEY IN VIOLATION OF APPLICANT'S RIGHT TO DUE PROCESS. (AS PRESENTED IN APPLICANT'S DIRECT APPEAL)**

7

## CLAIM NUMBER TWENTY

**THE TRIAL COURT ERRED IN ADMITTING EVIDENCE BY VIOLATING TEXAS STATUTES AND APPLICANT'S DUE PROCESS RIGHTS UNDER THE TEXAS AND UNITED STATES CONSTITUTIONS. (AS PRESENTED IN APPLICANT'S DIRECT APPEAL)**

## CLAIM NUMBER TWENTY-ONE

**THE TRIAL COURT ERRED IN ADMITTING THE TESTIMONY OF ROYCE SMITHEY AND DR. RICHARD COONS WITH REGARDS TO THE FUTURE DANGEROUSNESS OF APPLICANT BECAUSE THE TESTIMONY VIOLATED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR DETERMINATION OF THE DEATH PENALTY. (AS PRESENTED IN APPLICANT'S DIRECT APPEAL)**

## CLAIM NUMBER TWENTY-TWO

**THE EVIDENCE IS LEGALLY AND FACTUALLY INSUFFICIENT TO SUSTAIN THE CONVICTION OF APPLICANT IN VIOLATION OF HIS RIGHT TO DUE PROCESS. (AS PRESENTED IN APPLICANT'S DIRECT APPEAL)**

## II.
## INTRODUCTORY STATEMENT OF FACTS AS TO THE CLAIMS FOR HABEAS CORPUS RELIEF

Applicant was charged with killing Samuel Roberts, Tiffani Peacock and Celso Lopez on August 24, 2005. This indictment was returned December 17, 2005, TR. Vol. 1 p. 4. The indictment alleged that these murders occurred during the course of committing robbery, or during the same criminal transaction pursuant to the same scheme or course of conduct or in the course of committing the offense of burglary. TR. Vol. 1, p. 4.

*8*

A jury was chosen after a lengthy individual voir dire, TR. Vol. 1, p. 154. The State's evidence at trial related to a criminal transaction that started on August 19, 2005. Various witnesses testified that Applicant, Gerald Manzanalez and Christopher Times broke into the residence of Kenneth Nairn and stole a number of weapons, including an RG .22 caliber pistol and an H&R .22 caliber pistol. Reporter's Record (hereafter "R"). Vol. 30, pp. 124 – 140. LeJames Norman testified that after the Nairn burglary, he and Applicant went to Samuel Robert's house for the purpose of robbing him. They entered the house and killed the three individuals named in the indictment. R. Vol. 32, pp. 118 – 175. Norman stated the H&R .22 caliber pistol, referred to as the short-barrel pistol was used by Applicant and Norman used a RG model pistol, referred to as the long-barrel pistol. R. Vol. 32, p. 157. There was testimony the short-barrel pistol left six lands and grooves on the fired bullet and the long-barrel pistol left eight land and grooves on a bullet fired from it. R. Vol. 33, pp. 98, 99.

The State sought to corroborate Norman's evidence by the testimony of the firearms examiner. He testified some of the recovered bullets had eight lands and grooves and others had six lands and grooves, R. Vol. 33, pp. 98 – 99, and the testimony of Dr. John Stash, who did the autopsy, and established the relationship between the bullets recovered and the victims' wounds. R. Vol. 33, pp. 16 – 47.

7

9

Applicant's girlfriend, Stacy Johnson, testified that she took Applicant to a lake where he threw two pistols into the water by a dam. R. Vol. 31, pp. 193 – 197. Johnson later led officers to the spot where this occurred, R. Vol. 31, p. 217, and the pistols were recovered. R. Vol. 32, pp. 53, 68. The pistols were connected to the Nairn burglary by serial numbers. R. Vol. 30, pp. 142 – 147 and identification by Kenneth Nairn.   R. Vol. 30, pp. 135 – 138.

There was evidence from the following witnesses that Applicant admitted his participation in the intrusion into Samuel Roberts' home:

1.   Stacy Johnson, R. Vol. 31, pp. 192 – 197; 206 – 210

2.   Bradford Butler, R. Vol. 34, pp. 49 – 54

3.   Cortney Hardaway, R. Vol. 34, pp. 172 – 174; 184 – 187

4.   Otis Santellana, R. Vol. 34, pp. 100 – 107

5.   Marvin Ceasar, R. Vol. 34, pp. 136 – 138

6.   Jonathan Snyder, R. Vol. 34, pp. 145 – 147

7.   Kevin Childs, R. Vol. 34, pp. 159 – 161

8.   Myron Hardaway, R. Vol. 34, pp. 192 – 194

9.   Lonnie Lyte, R. Vol. 31, pp. 224 – 225

However, each of the above witnesses either had some complicity in the criminal transaction or were prisoners of the State of Texas.

10

Applicant contested the State's evidence with his plea of not guilty. On January 16, 2007 the jury convicted Applicant of capital murder as a principal. TR. Vol. 1, p. 192. The jury answered "yes" to special punishment issue one (future dangerousness) and "no" to special issue two (nothing in mitigation of death) on January 23, 2007. Accordingly, Applicant was sentenced to death. TR. Vol. 1, p. 195.

## CLAIM NUMBER ONE RESTATED

APPLICANT WAS DENIED HIS RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION BECAUSE THE TEXAS DEATH PENALTY STATUTE DID NOT GIVE HIS JURY THE OPTION OF IMPOSING A PRISON SENTENCE OF LIFE WITHOUT THE POSSIBILITY OF PAROLE.

## STATEMENT OF FACTS AND ARGUMENT
## AND AUTHORITIES UNDER CLAIM NUMBER ONE

The Eighth Amendment categorically prohibits the State from inflicting cruel and unusual punishments. At minimum, the Eighth Amendment prohibits punishments considered cruel and unusual when the Bill of Rights was adopted. See Ford v. Wainwright, 477 U.S. 399, 405 (1986). The Eighth Amendment's protection is not limited to only those practices condemned by the common law in 1789. Id. at 406. "The prohibition against cruel and unusual punishments also recognizes the evolving standards of decency that mark the progress of a maturing society." Penry v. Lynaugh, 492 U.S. 1984, 106 L.Ed.2d 256, 286 (1989) (quoting

9

Trop v. Dulles, 356 U.S. 86, 101 (1958) (plurality opinion).  Our evolving societal standards today demand that capital sentencing authorities be permitted to consider imposing a sentence of life-without-parole as an alternative to the death penalty.  Because the Texas capital sentencing scheme failed to include such an alternative for Applicant, that scheme violated the Eighth and Fourteenth Amendments.

In identifying societies "evolving standards," courts look to objective evidence of how our society views a particular punishment practice today.  "The clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures."  Penry, 106 L.Ed.2d at 286.  The Texas legislature has recently passed a law giving jurors the option of a life without parole prison sentence.  Tex. Code Crim. Proc. 37.071.  However, it was not available at Applicant's punishment trial. TR. Vol. 1, p. 184.  The following are other examples of recent legislation concerning death penalty sentencing.  See Md. Ann. Code Art. 27 §412(b) (1987) (a person convicted of murder in the first degree "shall be sentenced to death, imprisonment for life, or imprisonment for life without the possibility of parole."); Okla. Stat. Tit. 21, §701.9(a) (Supp. 1988) (same); Mont. Code Ann. §46-18-202(2) (1989) (permits sentencing court to deny defendant eligibility for parole while serving any sentence for a term of more than one year); Nev. Rev. State §175,554(4) (1984) (sentencing body may impose life

10

12

Case 5:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 12 of 74

imprisonment or capital punishment for first degree murder, and can specify whether imprisonment is with or without the possibility of parole); Wash. Rev. Code Ann. §9A.32.040 (1988) (presence of aggravating circumstances will enable a jury to impose life imprisonment without possibility of parole); Ala. Code §13A-546(e) (1975) (jury recommends an advisory sentence of death or life imprisonment without parole); Ark. Stat. Ann. §5.4-601(b)(1) (1981) (as an alternative to the death penalty, capital murder shall be punished by life imprisonment without parole); Cal. Penal Code §190.3 (West 1978) (similar); Del. Code Ann. Tit. 11, §4209(a) (1987) (same); La. Code Crim. Proc. Ann. Art. 905.6 (West 1988) (if a jury unanimously finds a death penalty inappropriate, it must recommend a sentence of life imprisonment without the benefit of probation, parole or suspension of sentence); Mo. Rev. Stat. §565.020.2 (Supp. 1988) (specifically designating only death and life-without-parole as the punishment alternatives for first degree murder); Neb. Rev. Stat. 28-105,-303, 29-2520 to -2524 (1977) (same); N.H. Rev. Stat. Ann. §630:5 (V) (1982) (authorizing court to impose sentence of life-without-parole as an alternative to death sentence); Ill. Rev. Stat. Ch. §1005-8-1 (Supp. 1988) (allowing option of life-without-parole in alternative to capital punishment in cases where murder is accompanied by exceptionally brutal or heinous behavior); Conn. Gen. Stat. §§ 53a-353. -46a(f)

11

*13*

Case 5:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 13 of 74

(1985) (life-without-parole an option in capital cases were death is not imposed); Idaho Code § 18-4004 (1987) (punishes murder in the first degree with death or life imprisonment, and authorizes court to designate natural life sentence); Vt. Stat. Ann. Tit. 13, § 2303(a) (1988) (requiring that Vermont's minimum life term must be at least 35 years and may include life-without-parole) S.D. Codified Laws Ann. 24-15-4 (1988) (similar); Va. Code Ann. 53.1-151 (B1) (1987) (if defendant has two other felony convictions of any sort, he or she will be ineligible for parole); Pa. Cons. Stat. Ann. §331.21 (Pardon 1984) (life-without-parole an alternative to death); S.C. Code Ann. §16-3-20(A) (Law. Co-op. 1983).

These statutes are compelling evidence of an emerging national consensus that capital sentencing requires the life-without-parole alternative. This type consensus has shaped Supreme Court cases on the death penalty. In Thompson v. Oklahoma, 487 U.S. 815, 101 L.Ed.2d 702 (1987), for example, the Supreme Court considered whether executing minors offended contemporary standards of decency. The court emphasized that eighteen states had expressly established a minimum age in their death penalty statutes, and all of them required that the defendant have obtained at least the age of sixteen at the time of the offense. Thompson, 101 L.Ed.2d at 714-715 & n.30. The court found these statutes to be compelling evidence that "it would offend civilized standards of decency to

12

14

Case 5:13-cv-00043   Document 7-2   Filed on 11/14/13 in TXSD   Page 14 of 74

execute a person who was less than sixteen years old at the time of his or her offense..." Id. At 715. The fact that a large percentage of the death penalty states, if not all, now require a life-without-parole alternative to death is equally compelling evidence of an emerging national consensus that contemporary standards of decency require such an alternative. Compare Ford v. Wainwright, 477 U.S. 399, 408 n. 2, 408 -410 (1986) (noting that twenty-six states had statutes explicitly requiring suspension of the execution of a capital defendant who meets the legal test for incompetence, court persuaded that state is prohibited from carrying out a sentence of death on a prisoner who is insane).

A second societal factor the court has examined in determining the acceptability of a capital punishment practice to American sensibility is behavior of juries. Penry, 106 L.Ed.2d at 288. In those states which offer a life-without-parole alternative to death, juries, have embraced the life alternative. In Alabama, for example, "[1]life-without-parole for capital murders...is a popular, effective penalty option that appears to have formidable support." J. Wright, Life-Without-Parole: An Alternative to Death or Not Much of a Life at All, 43 Vand. L. Rev. 529, 550-551 (1990). According to Assistant Alabama Attorney General Ed Carnes, "life-without-parole works well in Alabama and is viewed as a beneficial sentencing alternative by professionals in virtually all segments of the criminal

13

Case 5:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 15 of 74

justice system," Id. at 548-849. Alabama's present capital sentencing scheme went into effect in 1875. As of March 1987, Alabama juries had sentenced 109 defendants to terms of life-without-parole rather than death for capital murder convictions. Id. at 548. In March 1989, the estimated total was 133 inmates serving terms of life-without-parole. One can assume that many, if not most, of those inmates would have received the death penalty under Alabama's former capital sentencing scheme as well as under schemes now in place in those fourteen states that lack any life-without-parole option. Clearly, Alabama juries view the life alternative as, in many cases, a more effective means than death of fulfilling society's interest in deterrence and rehabilitation. The public perception is that a life sentence does not mean the accused will die in prison. This compounds the injustice of not having a life-without-parole option. The problem is exacerbated because Applicant was in his twenties at the time of sentencing.

Given the overwhelming objective evidence of a national consensus against execution without a life-without-parole sentencing option, the absence of such an option in Texas offends "evolving societal standards of decency" and this violates the Eighth and Fourteenth Amendments. In Applicant's situation, it left jurors who wanted to keep a capital murderer off of the streets the option of the certainty of death and the uncertainty of life imprisonment. Applicant could not object to this

14

16

because the trial court judge had no authority over parole. Applicant was sentenced to die under the Texas sentencing scheme which lacked a life-without-parole alternative and his death sentence must be vacated and a new sentencing hearing held under the current Texas punishment statute.

## CLAIM NUMBER TWO RESTATED

APPLICANT WAS DENIED HIS RIGHTS UNDER THE FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION BECAUSE THE TEXAS DEATH PENALTY STATUTE DOES NOT PLACE THE BURDEN OF PROOF ON THE STATE TO DISPROVE ANY CIRCUMSTANCE OR CIRCUMSTANCES MITIGATING AGAINST THE DEATH PENALTY.

## STATEMENT OF FACTS AND ARGUMENT
## AND AUTHORITIES UNDER CLAIM NUMBER TWO

Applicant was denied his right to due process under the United States Constitution because the Texas death penalty statute special issues do not place the burden of proof on the state to disprove circumstances mitigating against execution. Texas predicates a death penalty verdict on special issues, including one on mitigation. These special issues are elements of the death penalty framework that due process requires the state to prove beyond a reasonable doubt. Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed. 556 (2002). Ring, while not setting out a new rule of constitutional law, clarified the state's punishment burden in capital cases.

15

17

Case 5:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 17 of 74

The Texas statutory scheme does not require the state to prove a lack of mitigating circumstances in connection with its death penalty special issues. Tex. Code Crim. Proc. Art. 37.07(2)(c). Trial objections to this would be futile because of the statutory mandate. The harm done to Applicant by his scheme was egregious. Applicant's jury was required to answer the following questions:

### Special Issue Number One

Do you find from the evidence, beyond a reasonable doubt, that there is a probability that the defendant, Ker'Sean O. Ramey, would commit criminal acts of violence that would constitute a continuing threat to society?

### Special Issue Number Two

Do you find from the evidence, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than the death sentence be imposed?

TR. Vol. 1, p. 183.

The jury's "yes" vote to Number One and a "no" vote to Number Two caused the trial court to order Applicant to be executed.

Special Issue Number Two does not specifically place the burden of proof on the defendant or the state. Ring requires the state to shoulder the burden of proof beyond a reasonable doubt for this issue when it chooses to go forward with a

16

*18*

punishment trial seeking the death penalty. <u>Ring</u> states that "under the due process clause of the Fifth Amendment and the notice of jury trial guarantees of the Sixth Amendment, any fact, (other than prior conviction) that increases the maximum penalty for a crime must be charged in the indictment, submitted to the jury, and proved beyond reasonable doubt." <u>Ring</u>, 536 U.S. at 600, 122 S.Ct. 2448. The Fifth Amendment is made applicable to the states by the Fourteenth Amendment.

Special Issue Number Two increases the maximum penalty for capital murder. Here is why. Sec. 1 of Art. 37.071 provided at the time of Applicant's trial "if a defendant is found guilty in a capital felony case in which the state does not seek the death penalty, the judge shall sentence the defendant to life imprisonment." Thus, the maximum penalty of felony capital murder is an automatic life term, unless the state seeks to increase it by establishing that the defendant is a future threat, and that there is nothing about the circumstances to warrant a life sentence. The state does not have to present any punishment evidence and the jury verdict of conviction sets out the maximum punishment of life. Once the state decides to go forward, <u>Ring</u> logically applies and imposes a burden of proof beyond a reasonable doubt on the issues.

Capital cases prior to <u>Ring</u> addressed the issue of mitigation and the degree of proof needed. The Supreme Court has noted a distinction between facts in

17

19

Case 9:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 19 of 74

aggravation of punishment and facts in mitigation. Apprendi v. New Jersey, 530 U.S. 466, 490-91, No. 16, 120 S.Ct. 2348, 147 L.Ed. 435 (2000). In this context, it should be noted that Texas does not require the state to prove specific aggravating factors to be weighed against mitigating factors. Walter v. Arnim speaks to this in its holding that when a state has the burden of proving the existence of aggravating circumstances that merit death, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency. Walter v. Arnim, 497 U.S. 39, 650, 110 S.Ct. 3047, 3085, 111 L.Ed. Vol. 511 (1990). Texas cases have held that because the state has the burden of proof beyond a reasonable doubt on the issue of whether or not a capital murder was committed (by definition, a murder plus an aggravating factor) no other burden is necessary, except future dangerousness. Williams v. State, 937 S.W.2d 479 (Tex.Crim.App. 1996). This is based on the idea that the aggravated nature of Texas capital offenses already constitutionally narrows the eligibility for the death penalty. This rationale is not well- founded. The Texas capital murder statute provides for over twenty different manner and means to commit capital murder. Texas Penal Code sec. 19.03(a). Proving a capital murder does not counter-balance the state not having the burden to prove insufficient mitigation for a death sentence.

18

20

In summary, <u>Ring</u> places the burden on the state to prove insufficient mitigation under the Texas death penalty scheme. As a practical matter, Texas law imposes the burden on the defendant. This is because the state's position in death penalty cases is that once a capital murder is proven, and future dangerousness is established, then it is up to the defendant to prove something to lessen the otherwise appropriate penalty of death. Accordingly, Applicant's death sentence should be set aside and a new punishment hearing ordered.

## CLAIM NUMBER THREE RESTATED

**THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE AS TO VENIREPERSON LICERIO, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.**

## STATEMENT OF FACTS AND ARGUMENT
## AND AUTHORITIES UNDER CLAIM NUMBER THREE

The prosecution in Applicant's case successfully challenged nine otherwise qualified venirepersons on the ground that each would require a higher burden of proof than beyond a reasonable doubt in assessing a death sentence. The claim was that this made them unfit jurors because they could not follow the law that placed only a beyond a reasonable doubt burden on the State. The prosecutor adroitly set up the venirepersons for the challenge by comparing the importance of taking a human life as punishment with the trivial nature of a speeding fine or other

19

21

Case 9:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 21 of 74

minor penalty. The prosecutor prefaced his question by informing the venirepersons that when a life was at stake, other potential jurors wanted more than the standard burden. The prosecutor then used a series of loaded questions designed to have the potential juror express the belief that because a man's life was at risk, they might want more proof from the state than in a minor case. This would then lead to a successful challenge. This was a cynical perversion of death penalty jury selection and deprived the Applicant of his constitutional rights.

The nine potential jurors will be addressed in order, first with Mr. Licerio. The prosecutor focused in on the execution question of future dangerousness. Mr. Licerio was told "some jurors tell us this . . . I don't have any problem with beyond a reasonable doubt when talking about guilt or innocence, but when you start telling me, If I know this answer is the first answer to putting this defendant to death, aha, then I need something beyond a reasonable doubt . . . because now we are talking about the death penalty, do you feel that when you start answering the question, which deals with life or death, that you might need a higher burden . . . you might need, maybe to an absolute certainty or a greater burden that beyond a reasonable doubt." Answer: "Yes." R. Vol. 12, pp. 256, 258. In the context of the question, is it reasonable to expect anyone not to agree with the prosecutor? The juror's actual beliefs are not elicited. This is illustrated when defense counsel

22

follows up with the actual future dangerousness question and Licerio gives a definite "yes" to being able to follow the reasonable doubt standard. R. Vol. 12, p. 260. Licerio was then subjected to reexamination from both sides. He clearly could follow the law, he declared: "Once we have all the facts and everything, I wouldn't need a higher standard." This is reaffirmed as the prosecutor asks his last question "...are you telling me that you want a higher standard than the reasonable doubt standard you used for guilt or innocence to find future dangerousness?" Licero says "no." R. Vol. 12, p. 270. The prosecutor then asks "before you would impose the death penalty, you would want certainty?" Licerio agreed. R. Vol. 12, p. 270. This demonstrates that Licerio could follow the law. A juror has to find guilt beyond a reasonable doubt, and the future dangerousness probability beyond a reasonable doubt. However, a juror can demand certainty as to whether anything mitigates against the death sentence. The Texas statute does not have a burden of proof and the jurors can use the standard of absolute certainty before a finding of a lack of mitigation. Adams v. Texas, 448 U.S. 38 (1980) clearly allows Licerio to serve "nor in our view would the Constitution permit the exclusion of jurors from the penalty stage of a Texas murder trial if they aver that they will honestly find the facts and answer the questions in the affirmative if they are convinced beyond a reasonable doubt, but not otherwise, yet who frankly concede that the prospects of

21

23

the death penalty may affect what their honest judgment of the facts will be or what they may deem to be a reasonable doubt. Such assessments and judgments by jurors are inherent in the jury system, and to exclude all jurors who would be in the slightest way affected by the prospect of the death penalty or by their views about such a penalty would be to deprive the defendant of the impartial jury to which "he may be entitled under law." Adams v. Texas, 109 S. Ct. 2521, 448 U.S. 52. See also, Ransom v. Teas, 920 S.W.3d 288 (Tex. Crim. App. 1994). The trial court clearly abused his discretion by not following the tenets of Adams and allowing the prospective juror to serve, subject to peremptory strikes. The trial court alluded to some other grounds when granting the challenge. These other grounds are not supported by the record. R. Vol. 12, pp. 272, 273, and the State did not assert them. See Green v. State, 764 S.W.2d 242 (Tex. Crim. App. 1989). Defense counsel did object to the court's action. R. Vol. 12, p. 272.

Applicant was clearly harmed by this. The State could marshal its peremptories because it had a gimmick to disqualify jurors at its disposal. Further, the constitution precludes the State from executing someone where jurors such as Licerio are excluded. Adams and Grey v. Mississippi, 107 S. Ct. 2045 (1987).

22

24

Case 5:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 24 of 74

## CLAIM NUMBER FOUR RESTATED

THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE AS TO VENIREPERSON MARTINEZ IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

### STATEMENT OF FACTS AND ARGUMENT
### AND AUTHORITIES UNDER CLAIM NUMBER FOUR

Venireperson Martinez was the next juror to let his belief in the importance of making a correct decision when a life was at stake disqualify him. The prosecutor set Martinez up by telling him "Mr. Martinez, some jurors tell me, well if I was involved in a speeding trial – that's a criminal matter – by the way – and I was in the jury, you know, to me guilt beyond a reasonable doubt would be at a certain point but, if you're talking about the death penalty, you're talking about having me as a potential juror to, matter one, find the defendant guilty, so that I make sure I don't convict an innocent man and give him the death penalty, then I'm going to need more than a reasonable doubt. I'm going to need proof to an absolute certainty or very close to an absolute certainty. Do you feel that way, Mr. Martinez, or how do you feel about that?" R. Vol. 14, p. 59.

What the prosecutor is capitalizing on is that the level of proof to dispel a reasonable doubt to fine someone for speeding might be less than the level of proof necessary to dispel a reasonable doubt to execute someone in the same juror.

23

25

Case 9:13-cv-00043   Document 7-2   Filed on 11/14/13 in TXSD   Page 25 of 74

<u>Adams</u> allows this.  It does not mean that person can not follow the law as to burden of proof.  Martinez's response illustrates the confusion the questions cause.  "Well, I think if, to me, I prefer that there be no doubt, enough evidence was given to where, you know, we would feel there was no doubt . . . because I do worry about . . . sending somebody, you know, of giving somebody the death penalty when I might think they're innocent."  R. Vol. 14, p. 60.

Martinez was subjected to prolonged questions by the State and asked to quantify beyond a reasonable doubt.

> Prosecutor:  "Well call this 100 percent, okay, that's no doubt.  Are you telling me that in order to convict somebody of the death penalty that you would need evidence as such that it would be no doubt.  Is that what you are saying?
>
> Martinez:  "I'd have to be more than 90 percent sure . . . I'd say at least 95 percent positive.

Martinez went on to say that for another criminal offense it would have to be "at least 90 percent . . . in the same range. . ." but he would put a slightly higher burden before executing someone.  R.  Vol.  14,  p.  64,  65.

Martinez was wrongly struck on the prosecutor's challenge.  R. Vol. 14, p. 68.  This was error. He could follow the beyond a reasonable doubt standard.  In fact, Martinez would allow the State a less than reasonable doubt burden on some criminal cases.  He could convict and still be 10

24

26

Case 5:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 26 of 74

percent convinced of the person's innocence. That seemed less than beyond a reasonable doubt. His desire to be 95 percent sure before he could execute someone seems generous to the State. It was certainly less than a no doubt standard. The fact that Martinez could vote to execute someone and still have a 5 percent doubt shows he would be fair to the State. He was clearly qualified on burden of proof and the court abused its discretion in excusing him. Martinez clearly could follow the court's instruction on reasonable doubt, as he testified. R. Vol. 14, pp. 66, 67.

Defense counsel objected to the excusal for cause. R. Vol. 14, p. 68. Applicant was clearly harmed by the court's decision. See Adams and Grey.

## CLAIM NUMBER FIVE RESTATED

THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE AS TO VENIREPERSON ALVAREZ, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

### STATEMENT OF FACTS AND ARGUMENT
### AND AUTHORITIES UNDER CLAIM NUMBER FIVE

Venireperson Alvarez was the next juror to be disqualified on the reasonable doubt instruction. R. Vol. 16, p. 173.The prosecutor again started with his statement that to some jurors a petty case would require a lesser amount of proof to form a sentence than that necessary to execute someone. R. Vol. 16, pp. 168, 169.

27

Alvarez fell into the group that wanted more proof before he could fashion a death sentence. He summed up his standard "I don't think I could sit here, and I would have to make sure the truth comes out that, I would have to make sure the trial, I mean, I would have to see more evidence, more. I would have to make sure that if I'm going to kill somebody, you know what I mean – I can't going into a death penalty trial. I would have to make sure everything is straight. I mean, everything is, I would have to, let's see, I would have to make sure that everything comes out. I want to make sure that the truth comes out, or I would want to know if it's, if he's guilty or not guilty." Although inarticulate, Alvarez was saying he wanted to believe the truth in the State's evidence before he answered questions that resulted in death. This did not mean he could not follow the beyond a reasonable doubt standard.

Alvarez did say he wanted certainty, but his responses were skewed due to the State's opening remarks about the jurors' wanting more evidence in a capital case than a hot check case. That is not a fair way to gauge whether a potential juror can follow the law and a juror can require certainty before assessing the death penalty because the mitigation question does not set a burden.

Alvarez excusal was an abuse of discretion under <u>Adams</u> and the Applicant was harmed. It amounts to a fundamental error. See <u>Adams v. Texas</u>, 109 S. Ct.

2521, 448 U.S. 52 and Grey v. Mississippi, 107 S. Ct. 2045 (1987).

Defense counsel did not object.

## CLAIM NUMBER SIX RESTATED

THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE AS TO VENIREPERSON LONG, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

### STATEMENT OF FACTS AND ARGUMENT
### AND AUTHORITIES UNDER CLAIM NUMBER SIX

Venireperson Long was also challenged for cause on his position on burden of proof and excluded. R. Vol. 17, p. 165. This was an error. Long said he would need a higher burden of proof to vote for capital murder than he would for speeding. Long said his higher burden was "almost 100 percent. I would have to be completely convinced . . . without a doubt," R. Vol. 17, p. 118 "to sentence someone to die." Texas law allows that because the mitigation questions are without any burden. There was not evidence that Long could not follow the law.

Applicant was clearly harmed by the exclusion. It was fundamental error to exclude a potential juror who could follow the law. See Adams v. Texas, 109 S. Ct. 2521, 448 U.S. 52 and Grey v. Mississippi, 107 S. Ct. 2045 (1987).

Defense counsel made no challenge.

27

29

Case 5:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 29 of 74

## CLAIM NUMBER SEVEN RESTATED

THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE AS TO VENIREPERSON BROWN, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

### STATEMENT OF FACTS AND ARGUMENT
### AND AUTHORITIES UNDER CLAIM NUMBER SEVEN

Venireperson Brown was also struck for cause on the State's motion. R. Vol. 19, p. 105. The prosecutor was now adding a diminished burden of proof to his petty case example. He told Brown beyond a reasonable doubt burden of proof might be only a 60 or 70 percent certainty. R. Vol. 19, p. 105. Brown naturally responded that she is going to need more than that for a death penalty. R. Vol. 19, p. 107. She went on to say that she would need absolute certainty before imposing the death penalty. Again, this response was not her burden for finding guilt or finding future dangerousness but for imposing death. Under the mitigation charge she can use any standard to evaluate the circumstances in order to decide whether to assess a death sentence. Further, Adams says she can match the State's burden to the magnitude of their request to take a life. A review of her entire testimony shows a potential juror who could follow our death penalty law as to burden of proof. R. Vol. 19, pp. 105 – 114.

The court's granting of the challenge for cause violated Applicant's

28

30

Case 9:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 30 of 74

fundamental constitutional rights. Applicant was harmed by the granting of the challenge. See <u>Adams v. Texas</u>, 109 S. Ct. 2521, 448 U.S. 52 and <u>Grey v. Mississippi,</u> 107 S. Ct. 2045 (1987).

## CLAIM NUMBER EIGHT RESTATED

THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE AS TO VENIREPERSON HAGER, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

### STATEMENT OF FACTS AND ARGUMENT
### AND AUTHORITIES UNDER CLAIM NUMBER EIGHT

Venireperson Hager was also improperly struck for cause. R. Vol. 19, p. 157. The prosecutor again inferred that a juror can be 60 or 70 percent convinced of guilt in a theft case to find someone guilty. He asked as if the juror would want more if a life was at stake. The juror naturally agreed. R. Vol. 19, p. 155. The prosecutor then asked the court to exclude Hager because she required more from the State with the death penalty at issue. R. Vol. 19, p. 157. She was struck. The prosecutor did not link the proof burden to the guilt or future dangerousness issue. This juror did not demonstrate she could not follow the law, and under <u>Adams</u>, the exclusion violates Applicant's constitutional rights. It was fundamental error. See <u>Adams v. Texas</u>, 109 S. Ct. 2521, 448 U.S. 52 and <u>Grey v. Mississippi,</u> 107 S. Ct. 2045 (1987).

31

Applicant did not object

## CLAIM NUMBER NINE RESTATED

THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE AS TO VENIREPERSON WARREN, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

### STATEMENT OF FACTS AND ARGUMENT AND AUTHORITIES UNDER CLAIM NUMBER NINE

Venireperson Warren was also struck for cause on the burden of proof issue. A review of her entire testimony shows a person who could clearly follow the law. R. Vol. 22, pp. 292 – 312. The prosecutor again started by saying that in some cases, 60 or 70 percent certainty meets the criteria for beyond a reasonable doubt. R. Vol. 22, p. 294. He again lumped all death penalty issues together by asking "Do you think you would require more of a burden than what you have established is beyond a reasonable doubt in order to impose the death penalty?" R. Vol. 22, p. 297. Early on, Warren said she would hold to State to beyond a reasonable doubt and no more. R. Vol. 22, p. 297.

Warren was even able to elucidate what had been going on with the other excluded jurors when she said the distinction in burden of proof in a petty case versus a capital case was not so much the weight of the evidence, but the bigger responsibility in making the right decision. R. Vol. 22, p. 302. She stated that she

Case 9:13-cv-00043  Document 7-2  Filed on 11/14/13 in TXSD  Page 32 of 74

would still not require absolute certainty. R. Vol. 22, p. 306. A close reading of her testimony, R. Vol. 22, pp. 292 – 312, shows a properly qualified, appropriate potential juror, yet she was truck for cause.

Warren should have been available to serve. Her disqualification violated Applicant rights under the constitution. It was fundamental error. See <u>Adams v. Texas</u>, 109 S. Ct. 2521, 448 U.S. 52 and <u>Grey v. Mississippi,</u> 107 S. Ct. 2045 (1987).

## CLAIM NUMBER TEN RESTATED

THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE AS TO VENIREPERSON PETTY, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

### STATEMENT OF FACTS AND ARGUMENT
### AND AUTHORITIES UNDER CLAIM NUMBER TEN

Venireperson Petty was erroneously struck for cause because he would have to be convinced to an absolute certainty before he could assess the death penalty. R. Vol. 23, p. 156. The Texas special issue in mitigation allows such an answer, since he could require absolute certainty there was not sufficient mitigation. He was not shown to be unable to follow the law. Petty's excusal was harmful error. Applicant did not object that the error is so fundamental as to require reversal. See <u>Adams v. Texas</u>, 109 S. Ct. 2521, 448 U.S. 52 and <u>Grey v. Mississippi,</u> 107 S. Ct.

2045 (1987).

## CLAIM NUMBER ELEVEN RESTATED

THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE AS TO VENIREPERSON GILLIG, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

## STATEMENT OF FACTS AND ARGUMENT
## AND AUTHORITIES UNDER CLAIM NUMBER ELEVEN

The court erred in granting the State's challenge on venireperson Gillig because he allegedly could not follow the law as to burden of proof. R. Vol. 22, p. 88. Gillig was a juror with questions about the death penalty, but clearly was qualified to serve. R. Vol. 22, pp. 72 – 78. The prosecutor was unable to manipulate disqualification answers with his general questioning about the beyond a reasonable doubt proof. He then sought to discuss specific issues. He said that if the State had between 50 and 51 percent proof of future dangerousness, the beyond a reasonable doubt burden had been met. R. Vol. 22, p. 82, lines 17, 18, 19. He asked Gillig if he agreed. Gillig said he could not. This did not disqualify Gillig. A preponderance of the evidence means a probability of the facts at issue. It was improper to further break this down to 50 percent plus but less than 51 percent. The prosecutor then referred to the portion of future dangerousness charge that required acts of criminal violence. He offered the example of an

32

34

Case 5:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 34 of 74

individual who would probably commit arsons or burglary in the future, but "he never would hurt anybody, in your mind he's the kind of a person that would before he burned a building down he would check it, double check it, triple check it to make sure nobody is there. And he's the kind of person that would never break into a house or a building unless nobody was there, never ever going to hurt anyone." R. Vol. 22, p. 85, lines 4 – 10. Gillig did not agree that he would have to consider this person a future danger. This was permissible. The juror was free to look at the acts and decide whether this scenario required a vote leading to the death penalty. Additionally, the prosecutor hypotheticals did not even touch on other factors that would have allowed Gillig to vote "yes" to future dangerousness. See Williams v. State, 863 S. W. 2d. 290 (Tex. Crim. App. 1993).

The prosecutor's questions were improper commitment questions going to a narrow facet of potential future dangerousness proof. Yet he lodged a successful challenge. Applicant did not object.

The decision to strike Gillig on this issue was a fundamental error. It harmed Applicant. See Adams v. Texas, 109 S. Ct. 2521, 448 U.S. 52 and Grey v. Mississippi, 107 S. Ct. 2045 (1987).

35

## CLAIM NUMBER TWELVE RESTATED

THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE APPLICANT'S CHALLENGE FOR CAUSE AS TO VENIREPERSON GLAWSON, IN VIOLATION OF APPLICANT'S RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

### STATEMENT OF FACTS AND ARGUMENT
### AND AUTHORITIES UNDER CLAIM NUMBER TWELVE

Venireperson Glawson was much in favor of the death penalty. She believed capital punishment should be used more often than it was and that capital punishment gives the criminal what he deserves. R. Vol. 15, p. 27. The prosecutor led her into saying that her feelings about the death penalty would not influence the way she assessed punishment question. (The defense did not voir dire Glawson about the basis or extent of her pro-death beliefs.)

Glawson stated she and her husband had discussed the death penalty and their overall view of it was "we kind of felt like if someone is going to be put away for life, then why not do the death penalty instead of, as we put it, wasting taxpayers' money." R. Vol. 15, p. 16, lines 22, 24. She agreed with the prosecutor that the law did not allow for her to factor that in, R. Vol. 15, p. 17, and that it would be inappropriate for that to be a reason for death but she never said she could do follow the law and ignore her beliefs. R. Vol. 15, p. 17. In fact, she told defense counsel that the economics might influence her deliberations. R. Vol. 15,

34

36

p. 75.

Defense counsel challenged her for cause, and to put the court on notice that she had a bias in favor of the death penalty and that she could not follow the law and disregard her personal beliefs that cost to the taxpayer was a factor that weighed in favor of giving a death sentence. R. Vol. 15, p. 76. This objection was denied and the defense used a peremptory strike. This action by the court was in error and violated Applicant's constitutional rights. See Holloway v State, 666 S.W.2d 104 (Tex. Crim. App. 1984).

Applicant requested additional peremptories but was denied the request. R. Vol. 29, p. 85. This presumably resulted in taking an unwanted juror because two additional jurors were taken after his request was denied. R. Vol. 29.

## CLAIM NUMBER THIRTEEN RESTATED

APPLICANT'S CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN THE STATE REQUESTED AND RECEIVED A JURY SHUFFLE FOR IMPERMISSIBLE RACIALLY DISCRIMINATORY REASONS.

### STATEMENT OF FACTS AND ARGUMENT
### AND AUTHORITIES UNDER CLAIM NUMBER THIRTEEN

A second venire panel was summoned when the first jury panel was depleted without twelve jurors being selected. R. Vol. 21, p. 11, 12. The trial court asked the parties if they wanted a shuffle. The defense declined but the State requested a shuffle. R. Vol. 21, p. 12.

35

*37*

After general instructions, Applicant inquired of his attorney about the State asking for a shuffle. In response, Applicant's attorney made his version of a Batson objection. RR. Vol. 21, p. 19, 20. Batson v. Kentucky, 476 U.S. 79 (1986). The State acknowledged the objection that the shuffle was done for constitutionally impermissible racial reasons. and gave their version of a race-neutral explanation, "I have individuals who have assisted me in going through the list and given me information about the prospective jurors . . .the overwhelming majority of the folks that they had suggested would be good State's jurors were towards the back of the panel. RR. Vol. 21, pp. 19, 20. In other words, the State's race-neutral explanation was someone told them the good State's jurors were in the back. However, these anonymous informants could be considering the race of the venirepersons in deciding what was a good State's juror. This was no race-neutral explanation.

It is Applicant's contention that the first two rows of the second panel contained a large number of black jurors. That was why he did not request a juror shuffle. See portion of Appellant's Brief, p. 4, in Applicant's pending direct appeal. (See attached exhibit.) After the jury shuffle, a great majority of the black venirepersons were moved to the back of the panel. Appellant's Brief, p. 4. Applicant now requests an evidentiary hearing so this issue could be fairly

36

resolved with a supplemental record.

The United State's Supreme Court in <u>Miller El v. Dretke</u>, 545 U.S. 231 (2005) held that the State may not use the procedure of the jury shuffle in racially discriminatory manner to remove black panel members to the rear of the panel. See <u>Miller El</u> 545 U.S. at 253 – 255. Here Applicant's constitutional rights and that of the black jurors to equal protection and due process were violated by the State's racially motivated shuffle.

## CLAIM NUMBER FOURTEEN RESTATED

APPLICANT'S AND JUROR STEADHAM-SCOTT'S CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN THE STATE EXERCISED A PEREMPTORY STRIKE IN A RACIALLY DISCRIMINATORY MANNER.

## STATEMENT OF FACTS AND ARGUMENT
## AND AUTHORITIES UNDER CLAIM NUMBER FOURTEEN

During voir dire, the prosecutor examined venireperson Steadham-Scott, a black juror. She was a qualified juror and not subject to challenge for cause. R. Vol. 28, p. 78. The State used a peremptory strike to exclude Steadham-Scott. Applicant lodged his <u>Batson</u> objection which was overruled by the trial court without requiring the State to give a race-neutral explanation (relying on the objection being not made contemporaneously with State's peremptory strike.) R. Vol. 30, pp. 9 – 10.

<u>Batson v. Kentucky</u>, 476 U.S. 79 (1986) held that a defendant may show a

Case 5:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 39 of 74

prima facie case of racial discrimination in the exercise of peremptory challenge by the prosecutor by showing that members of his racial group have been excluded and that there are facts and circumstances suggesting that the exclusion was racially motivated. Here the record implicitly shows that Applicant's jury was all white (with eleven seated when Steadham-Scott was questioned) and that she was black. The Batson criteria were met when Applicant asked for a belated race-neutral explanation. When the State refused, the State did not meet Batson's burden to come forward with a race-neutral explanation for challenging the juror.

The actions of the trial court and prosecutor violated the equal protection rights of Steadham-Scott and Applicant. Applicant was clearly harmed by this and a reversal is required. Batson.

## CLAIM NUMBER FIFTEEN RESTATED

APPLICANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AT THE JURY SELECTION STAGE OF HIS TRIAL IN VIOLATION OF HIS RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

### STATEMENT OF FACTS AND ARGUMENT
### AND AUTHORITIES UNDER CLAIM NUMBER FIFTEEN

Applicant's counsel's representation at jury selection was constitutionally ineffective. The overall impact of the deficient voir dire clearly harmed Applicant as the jurors selected sentenced him to die.

38

40

Case 5:13-cv-00043  Document 7-2  Filed on 11/14/13 in TXSD  Page 40 of 74

Strickland v. Washington, 466 U.S. 687, 104 S. Ct. 2052 established the standard for determining effective assistance of counsel. Under Strickland, Applicant must first establish that counsel's performance fell below prevailing standards of practice. ". . .the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 2065. A review of the voir dire shows that counsel's performance did not meet the professional norms for capital case representation.

Counsel did not lodge the standard Batson objection to the allegedly racial discriminatory jury shuffle of the second panel by the State, or to the State striking black juror Steadham-Scott. Puckett v. Elem, 514 U.S. 765, 115 S. Ct. 1769, 131 L.Ed.2d 834 (1995) sets out the objection process. First, contemporaneously object to the peremptory strike (or shuffle), then make a prima facie case of racial exclusion in order to require the State to make a race-neutral explanation. Making a proper Batson objection is a rudimentary skill necessary to defend a minority defendant facing the death penalty. It is apparent from the record that defense counsel was not aware of Puckett or the Texas cases endorsing it. Ford v. State, 1 S.W.2d 691 (Tex. Crim. App. 1999). Accordingly, it is probable that appellate courts will rule that Applicant gets no redress on the significant Batson issues in his trial. In fact, in regard to the juror shuffle issue, counsel did not even place the

race of the venirepersons on the record. (See attached State's Brief on Direct Appeal exhibit). This clearly contravenes accepted capital defense. For a <u>Batson</u> challenge, "it is vital for counsel to place the race of every member of the venire on the record". <u>Defending a Capital Case in Texas</u>, The Texas Resource Center, First Edition 1989, p. 752.

Defense counsel was also unaware of how to preserve error in the event the court denied a defense challenge for cause. In order to preserve error when the court denies a challenge for cause by the defense, the defense must use all its peremptories, ask for more, be denied and make known to the court that an objectionable juror is seated. <u>Janecka v. State,</u> 937 S.W.2d 456, 470 – 471 (Tex. Crim. App. 1996). This was not done in Applicant's voir dire. After apparently all the allotted defense peremptory strikes were exercised, the trial court told defense counsel that he could ask for more. Defense counsel made such a request and it was denied. R. Vol. 29, p. 86. Juror Ramirez had been previously interrogated. He had only responded to leading questions by the State and to limited questioning by the defense. The defense had to take him yet did not voice to the court he was objectionable, thereby waiving any claims about the denial of their previous challenges for cause. (Example: Venirepersons Glawson, R. Vol. 15, p. 76; Garcia, R. Vol. 9, p. 163; and Cooper, R. Vol. 25, p. 173). The last juror taken was also not identified as objectionable to the defense, Lazo, R. Vol. 29, p. 157. In

42

Case 5:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 42 of 74

fact, the defense did not even voir dire her. There was no rationale in not telling the court that the defense would use a peremptory strike on these jurors if one was available. This illustrates unfamiliarity with capital trial law that is again below the accepted standard.

Yet another failing was the non-adversary nature of Applicant's counsel in the response to the prosecutor's overreaching. The defense did not contest the prosecutor's reasonable doubt standard of 60 or 70 percent certainty, R. Vol. 19, p. 65; Vol. 22, p. 294, or his telling jurors that someone who they believed would never hurt anyone but would probably do a future burglary was always a threat of future criminal violence, R. Vol. 22, p. 85, or his legal contention that the venireperson had no right under law to be certain or sure before casting the ultimate vote for death. R. Vol. 23, p. 156; Vol. 22, p. 297. The defense let the prosecutor tell potential jurors what other venirepersons thought on an issue to set them up for strikes, thus canceling one advantage of individual voir dire. R. Vol. 14, p. 159; Vol. 16, p. 172. This type questioning was objectionable, yet defense counsel acquiesced to it. It lead to the disqualification of jurors and tainted the jury selection. This is another example of deficient performance.

Another deficiency was the defense's questioning of potential jurors. A review of the voir dire shows that defense counsel rarely asked about the

41

43

Case 5:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 43 of 74

prospective jurors' beliefs and opinions on the mitigation, or future dangerousness issues. R. Vol. 22, p. 164; R. Vol. 23, p. 82; R. Vol. 26, p. 108. This wasted the benefit of the individual voir dire to Applicant. "In every case, . . ., one goal of voir dire is to elicit sufficient information about jurors' attitudes and experience to intelligently exercise challenges – for cause and peremptory. Extensive use of open ended questions, which allow the jurors to describe their attitudes and opinions in their own words, is crucial for achieving that goal. Otherwise, individual, sequestered voir dire will be wasted completely." Defending a Capital Case in Texas, The Texas Resource Center, First Edition 1989, p. 701. Here, voir dire was wasted because of the nature of the defense's questioning.

The defense also failed to seek and identify and exclude for cause those potential jurors who were irrevocably committed to impose a death sentence in a capital murder no matter the facts or circumstances of the case. See Thomas v.State, 403 S.w.2d 371 (Fla. 1981); Smith v. State, 573 S.W.2d 763 (Tex. Crim. App. 1978). This is a stated standard area of voir dire for capital defense. Defending a Capital Case in Texas, p. 721. A mandatory question of capital questions at voir dire is this one or one similar: "Do you agree that when a sane person takes the life of another human being during the course of committing a felony and his guilt is established beyond a reasonable doubt in a fair trial, that

42

*44*

Case 5:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 44 of 74

person should be sentenced to death?" or "Do you believe that if a sane person intentionally kills during the course of committing another felony, he should automatically receive the death sentence from a jury if found guilty beyond a reasonable doubt?" or "Venireperson, if you believe if you were sentencing a sane, intentional murderer, would the right thing to do ever be a life sentence instead of the death penalty?" See <u>Defending a Capital Case in Texas</u>, The Texas Resource Center, First Edition 1989, p. 721.

The defense counsel never used this type of questioning to identify and exclude jurors. An example of the defense's approach is as follows. Venireperson Gomez is asked: "What are you true feelings about the death penalty and its application?" Answer: "I believe the death penalty needs to be imposed where cases are of the heinous nature. RR. Vol. 26, p. 237 The defense foregoes the opportunity to ask "What do you mean by a heinous crime?" (i.e. perhaps a multiple murder like Applicant is accused of) or a question going to the essence of the trial "Would there be anything, don't tell me what, that could be shown you that would mitigate heinous murder circumstances enough to allow you in good conscience to assess a life sentence?"

In a similar circumstance was the questioning of venireperson Fuhrman. She would always assess the death penalty in a capital murder. She succinctly

43

*45*

outlined her views:

> Fuhrman: "Any person who commits murder, and to me, that means someone purposely goes out and does something . . . but someone who commits murder – that's an intentional act and I feel that I feel if someone intentionally does that, then yes, they deserve to pay with their life.

> Defense: "No equivocation?"

> Fuhrman: "No equivocation."

> R. Vol. 15, p. 135.

There was no follow up questioning as to whether she could follow the law on mitigation or future dangerousness. Defense did not challenge for cause but used a peremptory.

Another illustration of the ineffective questioning is that of venireperson Ullman. R. Vol. 9, p. 213. He was only asked one question and that concerned his questionnaire where he said he was in favor of capital punishment except in the few cases where it might not be appropriate. He said these few cases involved a situation where the offender was legally insane or not mentally capable to knowing what they were doing. There was no follow-up regarding mitigation and future dangerousness, even though the answer ostensibly made the juror subject to challenge for cause. Cuevas v. State, 575 S.W.2d 543 (Tex. Crim. App. 1978). This person was accepted by the defense as a juror. Other examples of the

44

46

incomplete and ineffective questioning are venirepersons Pavlish, R. Vol. 22, pp. 163 – 165; Curlee, R Vol. 23, pp. 76 – 83; and Cooper, R. Vol. 25, p. 167, where defense counsel is asked by the venireperson to go over mitigation and tells him: "It's evidence that will lessen a defendant's moral blameworthiness – the law will not allow me to go through any other definition." R. Vol. 23, p. 171.

Other voir dire deficiencies were the failure to present to the court a filed motion seeking voir dire relief, TR. pp. 130 – 137, the failure to object to venirepersons who were disqualified for cause, R. Vol. 15, p. 76, and the failure to object to the court granting invalid State challenges for cause. R. Vol. 16, p. 173; Vol. 17, p. 165, Vol. 19, p. 105; Vol. 19, p. 157; Vol. 22, p. 312; Vol. 23, p. 156; Vol. 22, p. 88.

When the State seeks the death penalty, there is a greater need for reliable procedures to screen out any bias and prejudice in the selection of a defendant's jury to ensure that the sentencing is not the result of arbitrary factors or prejudice. See Woodson v. North Carolina, 428 U.S. 280, 1976. The voir dire in Applicant's case was inadequate and he was ineffectively represented. Under Strickland v. Washington, 104 S. Ct. 2052 (1984) counsel's performance fell below prevailing standards of practice.

The second prong of Strickland is that there is a reasonable probability that,

45

47

but for counsel's unprofessional errors, the result of the proceeding would be different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland at 2068. When there is a "breakdown in the adversarial process" the fundamental fairness of the proceeding is implicated. Id. at 2069. There was a breakdown in the adversarial process in jury selection. The State basically ran roughshod over the Defense and picked 12 jurors who fit their profile to obtain a verdict of death. One can not confidently say an effective voir dire would not have lead to a jury which would have balked at giving the death penalty.

## CLAIM NUMBER SIXTEEN RESTATED

APPLICANT WAS DENIED HIS RIGHTS UNDER THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION TO EFFECTIVE ASSISTANCE OF COUNSEL AT PUNISHMENT CAUSING AN UNRELIABLE DETERMINATION OF A SENTENCE OF DEATH.

### STATEMENT OF FACTS AND ARGUMENT
### AND AUTHORITIES UNDER CLAIM NUMBER SIXTEEN

Applicant claims that his counsel was ineffective in presenting punishment evidence. The fact-finders in the sentencing phase of this and every capital case in Texas are asked two questions: is the defendant likely to be dangerous in the future and do mitigating factors bearing on the moral and personal culpability of the defendant mitigate against a sentence of death? Counsel's task is set forth

46

48

Case 9:13-cv-00043  Document 7-2  Filed on 11/14/13 in TXSD  Page 48 of 74

rather clearly: investigate the life of the client, uncover any and all evidence tending to counsel for life, including appropriate diagnostic testing and evaluations, and present that evidence to the jury in a clear, understandable manner. As shown below, counsel failed and neglected the duty they owed Applicant. As a result, Applicant's sentence of death is not an individualized and reliable determination as required by the Eighth Amendment.

Under Strickland v. Washington, 104 S.Ct. 2052 (1984), the Applicant must first establish that counsel's performance fell below prevailing standards of practice – "(t)he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 2065.

The defense only presented two witnesses, Applicant's mother (who was not even allowed to ask the jury to spare Applicant' life, R. Vol. 28, p. 111) and gerontologist Mark Kunik. Gerontologist Kunik was obviously of great importance to Applicant's request for life. The defense was deficient in his presentation. Kunik testified for the defense that based on his assessment, Applicant would not likely be dangerous in the future. He based his opinion on a study by a Dr. Sorenson. He applied that study to the facts he discovered about Applicant, including interviews with him. Kunik gave Applicant a 30 percent rating of future dangerousness, less that a probability.

47

49

However, on cross-examination, Kunik revealed he had never given a professional opinion on future dangerousness before, R. Vol. 38, p. 135, that all his work-related experience had been with aggression in old people, R. Vol. 38, p. 139, that he had never talked with Sorenson, and he did not know that Sorenson had been held not qualified in a number of state courts as an expert on future dangerousness, R. Vol. 38, p. 140, and that "Dauhmer" and Charles Manson could get a 54 percent probability of being dangerous in the future because that's as high as Sorenson's risk assessment level went, R. Vol. 38, p. 140. Kunik also admitted in cross that Applicant minimized his involvement in the offense; telling him he shot a person but did not kill him. Kunik's notes were required to be produced and they revealed Applicant told him he was there at the murder scene, and he did not shoot anyone. R. Vol. 38, p. 149. The expert admitted that his opinion was based on Applicant's not killing anyone. R. Vol. 38, p. 149. (Note: This is a punishment expert testifying after the subject has been found guilty of capital murder.) He also did not factor in a sexual assault of a child that Applicant was convicted of because Applicant did not admit to it. Kunik said this would have increased the risk. He also said he did not factor in evidence that Applicant possessed a weapon while in jail because he was not told about it. R. Vol. 38, p. 155.

Kunik admitted that if he had been told the factual scenario presented by the

48

50

State as to the crime, it would have increased Applicant's probability of future violence as would other factors about the circumstances that were not revealed to him   R. Vol. 38, pp. 159, 160, 161.  Kunik concluded his testimony that he would not want a relative to be a cellmate of Applicant in prison.  R. Vol. 38,  p. 162.

Dr. Kunik was the main witness for the defense.  A clear lack of preparation is shown in his presentation.  It goes without the necessity of argument or authority that  reasonable  assistance  would  involve  obtaining  a  qualified  future dangerousness expert and preparing him for cross-examination.  He would at least be advised to factor in the facts that the State proved at trial.

The second proof of Strickland is that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different.    A  reasonable  probability  is  a  probability  sufficient  to  undermine confidence in the outcome.  Strickland at 2068.  When there is a breakdown in the adversarial process, the fundamental fairness of the proceeding is implicated. Id  at 2069.   There  was  a  breakdown  in  the  adversarial  process.   The  only  defense witness (other than Applicant's mother) ended up being a witness for the State.

## CLAIM NUMER SEVENTEEN RESTATED

THE TRIAL COURT ERRED BY NOT INCUDING THE INSTRUCTIONS AND LESSER INCLUDED OFFENSES REQUESTED BY THE APPLICANT IN THE CHARGE OF THE COURT IN VIOLATION OF APPLICANT'S RIGHT TO DUE PROCESS. (AS PRESENTED IN APPLICANT'S DIRECT

51

APPEAL)

## STATEMENT OF FACTS AND ARGUMENT
## AND AUTHORITIES UNDER CLAIM NUMBER SEVENTEEN

Applicant objected to the charge that the trial court submitted to the jury during the guilt-innocence phase of the trial. R. Vol. 1, pp. 167 – 176. Applicant contends that the trial court did not give a complete and proper instruction as to accomplices concerning the testimony of LeJames Norman and Bradford Butler. Specifically, the instruction that accomplices cannot corroborate each others' testimony was not included. See Gamez v. State, 737 S.W.2d 315, 322 – 323 (Tex. Crim. App.-1987); Badillo v. State, 963 S.W.2d 854, 857 (Tex. App. – San Antonio 1998, pet. ref'd); Tex. Code Crim. Proc. Art. 38.14; W. Scott Carpenter & Paul J. McClung, Texas Criminal Jury Charges, § 12.850.30 (5th ed., 2004). Applicant properly tendered this requested instruction to the trial court. R. Vol. 1, p. 161; R. Vol. 35, pp. 7 – 8.

Applicant further contends that the testimony of Norman, Butler and Cortney Hardaway proffers enough evidence that the Applicant did not shoot anybody to require lesser included offenses to the submitted to the jury. R. Vol. 34, pp. 41 – 73; 106 – 111, 166 – 189.

As to the lesser included offense of murder, the court has held that if some evidence exists, from whatever source, a defendant is entitled to the inclusion of

50

52

the lesser included offense of murder in the jury charge. See <u>Blanton v. State,</u> No. 74214, 2004 WL 3093219 at *12 – 13 (Tex. Crim. App. Jun. 30, 2004) (not designated for publication). Additionally, since the State charged Applicant with capital murder in four disjunctive ways, he is entitled to any and all lesser included offenses raised by the evidence. R. Vol. 1, pp. 4 – 5; 162 – 166; 167 – 175; V. 35, pp. 8 – 11. See also <u>Feldman v. State</u>, 71 S.W.3d 384, 392 – 393 (Tex. Crim. App. 2000) <u>Broussard v. State</u>, 642 S.W.2d 171, 172 – 174 (Tex. Crim. App. 1982). The constitutional right to due process requires proper jury instructions.

### CLAIM NUMER EIGHTEEN RESTATED

AT THE TIME DR. JOHN A STASH PERFORMED THE AUTOPSY ON SAMUEL ROBERTS, HE WAS NOT A QUALIFIED MEDICAL EXAMINER AND THE EVIDENCE GIVEN BY HIM VIOLATED APPLICANT'S RIGHT TO DUE PROCESS. (AS PRESENTED IN APPLICANT'S DIRECT APPEAL)

### STATEMENT OF FACTS AND ARGUMENT
### AND AUTHORITIES UNDER CLAIM NUMBER EIGHTEEN

On January 22, 2007, the trial court received the verdict of the jury and sentenced Applicant to death. It is respectfully submitted that the testimony of John A. Stash, D.O., Assistant Bexar County Medical Examiner, should not have been admitted as evidence before the jury due to the fact that Dr. Stash was not qualified to be a medical examiner when he performed the autopsy and signed the autopsy report. At trial, Dr. Stash testified as to the manner and cause of death of

53

Case 5:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 53 of 74

Samuel Roberts. R. Vol. 33, pp. 8 – 66. After subsequently learning of Dr. Stash's lack of qualifications, Applicant promptly informed the trial court of the situation by filing his Third Supplemental Motion for Mistrial, or in the Alternative, Motion in Arrest of Judgment. R. Vol. 1, pp. 198 – 223. The trial court allowed the motion to be overruled by operation of law.

It is uncontroverted and undisputed that Dr. Stash performed the autopsy on Samuel Roberts' body on August 26, 2005. R. Vol. 1, pp. 207 – 219. Dr. Stash signed the autopsy as a Medical Examiner of Bexar County, Texas. R. Vol. 1, p. 216, 219. It is also uncontroverted and undisputed that Dr. Stash was not issued a Texas medical license until August 25, 2006, almost exactly one year after he performed the autopsy on the body of Samuel Roberts. R. Vol. 1, pp. 220 – 223. The State responded to the motion that although Dr. Stash did not have a valid Texas medical license, he did hold a physician-in-training permit which would allow him to be appointed a medical examiner. R. Vol. 1, pp. 224 – 228. It is the contention of Applicant that the physician-in-training permit does not meet the statutory requirements to be appointed a medical examiner in the state of Texas, as envisioned by the Texas Legislature.

Tex. Code Crim. Proc. Art. 49.25, §§2, 3, and 9 require that no person can be appointed as a medical examiner and/or assistant medical examiner unless he or

54

she holds a valid medical license issued by the Texas State Board of Medical Examiners. This same requirement is repeated in Tex. Code Crim. Proc art. 38.35(f). At the time the autopsy was performed on the body of Samuel Roberts, Dr. Stash did not meet these statutory requirements. The Texas Legislature did not grant a "physician-in-training" exception to the mandates of Tex. Code Crim. Proc. Arts. 49.25, §§2, 3, and 9 and 38.35(Ff). Additionally, the Texas State Board of Medical Examiners has previously reprimanded physicians for practicing as assistant medical examiners without a valid Texas medical license. *Cf. Texas State Board of Medical Examiners, In re License of Joye Carter, M.D.* Docket No. K-1383 (Agreed Order Feb. 2, 2001) (valid Texas medical license required to appoint an individual as an assistant medical examiner).

Applicant argues that the circumstances of Dr. Stash's testimony violates his constitutional due process rights.

### CLAIM NUMER NINETEEN RESTATED

THE TRIAL COURT ERRED IN ADMITTING THE EXPERT TESTIMONY OF RONALD CRUMLEY IN VIOLATION OF APPLICANT'S RIGHT TO DUE PROCESS. (AS PRESENTED IN APPLICANT'S DIRECT APPEAL)

### STATEMENT OF FACTS AND ARGUMENT
### AND AUTHORITIES UNDER CLAIM NUMBER NINETEEN

After conducting a <u>Daubert</u> hearing at the request of Applicant, the trial court overruled Applicant's Motion to Exclude the Expert Testimony of Ronald

53

55

Crumley Under the Provisions of Daubert/Kelly/Robinson. R. Vol. 1 pp. 113 –
117, V. 33, pp. 67 – 80. The trial court then allowed Ronald Crumley to testify as
an expert. R. Vol. 33, pp. 80 – 131.

The trial court should have excluded the testimony of Crumley, the State's
expert, because his expert testimony was neither reliable nor helpful to the jury.

A Court should exclude the testimony of an expert if it is not reliable.
Daubert v. Merrell Dow Pharmaceuticals, Inc., Daubert v. Merrell Dow
Pharmaceuticals, Inc., 509 U.S. 579, 592 – 593 (1993); E. I. DuPont de Nemours
& Co., Inc. v. Robinson, 923 S.W.2d 549, 554 – 556 (Tex. 1006); Kelly v. State,
824 S.W.2d 568, 572 – 578 (Tex. Crim. App. 1992). An expert witness may be
qualified and highly credible, but his conclusions may be based on unreliable
methodology. Scientific evidence that is not grounded "in the methods and
procedures of science" is no more than "subjective belief or unsupported
speculation." Daubert, 509 U.S. at 590. See also Robinson, 923 S.W.2d at 556;
Kelly, 824 S.W.2d at 572 – 573.

For the expert's testimony to be reliable, the following requirements must be
met: (1) the expert's testimony must be based on sufficient facts or date, (2) the
expert's testimony must be the product of reliable principles and methods, and (3)
the expert must apply the principles and method reliably to the facts of the case

54

56

See <u>Robinson</u> 923 S.W.2d at 556 – 557; <u>Kelly</u>, 824 S.W.2d at 571 – 572; Tex. R. Evid. 702. The trial court should have excluded the testimony of Ronald Crumley, the State's exert because the testimony was not reliable. Specifically, the trial court should have excluded the testimony because the expert's opinion is not consistent with the generally accepted methods used to gather the relevant scientific evidence in the expert's discipline. See <u>Daubert</u>, 509 U.S. at 594; <u>Robinson,</u> 923 S.W.2d at 557 – 558.

Crumley's firearms and ballistics test results and his opinion derived there from were faulty and unreliable because he was unable to:

1. Determine if any of the submitted bullets were fired from either of the submitted revolvers,

2. Determine if either of the submitted revolvers was involved in the commission of the alleged capital murders.

The Amended Firearms Report of Ronald Crumley has been admitted as part of the appellate record in this cause, R. Vol. 1, pp. 116 – 117; R. Vol. 43, Defendant's Exhibit 5.

As a result, any results obtained and any opinion reached by Crumley concerning whether either of the submitted revolvers were involved in the alleged capital murders, which were and are the basis of this action, and whether any of the submitted bullets were fired from the revolvers is inherently unreliable due to the

55

fact that no such determination could be made.  It is contended the testimony of Crumley misled the jury into believing that the two submitted revolvers were in fact the weapons used to commit the offenses and that the bullets submitted were fired from the two revolvers.  The court is asked to take judicial notice of the Request Analysis and the Result of Analyses contained in the report.  Applicant requests that the court reverse the judgment of the trial court and order an acquittal or, in the alternative, remand the case with instructions to order a new trial.

The admission of this testimony violated Applicant's due process rights.

### CLAIM NUMER TWENTY RESTATED

THE TRIAL COURT ERRED IN ADMITTING EVIDENCE BY VIOLATING TEXAS STATUTES AND APPLICANT'S DUE PROCESS RIGHTS UNDER THE TEXAS AND UNITED STATES CONSTITUTIONS. (AS PRESENTED IN APPLICANT'S DIRECT APPEAL)

### STATEMENT OF FACTS AND ARGUMENT
### AND AUTHORITIES UNDER CLAIM NUMBER TWENTY

Over Applicant's constant and persistent objections, the trail court admitted the testimony of Kenneth Nairn, ATF Agent David Taylor, Texas Ranger Morgan Miller, Gerald Manzanales, Christopher Times and State's Exhibits 1 through 38. R. Vol. 30, pp. 124 – 141; 141 – 147; 149 – 170 ; R. Vol. 31, pp. 16 – 33; 33 – 51; Vol. 41., State's Exhibits 1 – 38.  The trial court allowed irrelevant, immaterial and inadmissible evidence to be presented to the jury in violation of Tex. R. Evid. 401,

56

*58*

402, 404(b) and Tex. Code Crim. Proc. art. 38.26(a).

The indictment in this case sets forth the issues and elements that were material, relevant and germane to the prosecution's theory of the case. The above-mentioned testimony and evidence fit none of the evidentiary criteria.

The "Nairn Burglary" does not show that the Defendant committed the offense of capital murder. State's Exhibits 1 – 18 and 21 – 38 were not relevant not were they material to any theory of the prosecution's case concerning the elements of the offense of capital murder.

State's Exhibits 13, 14 and 15 are not material and relevant.

The offered evidence did not prove the proposition for which it was offered and Applicant's objection based on materiality and/or relevance was valid. See Lopez v. State, 651 S.W.2d 413, 415 – 416 (Tex. App. – Fort Worth 1983), *remanded on other grounds*, 664 S.W.2d 85 (Tex. Crim. App. 1983).

Additionally, in order to be admissible, the evidence must tend to prove or disprove the issues being litigated. The above-referenced testimony and evidence did neither. See e.g. Brown v. State, 757 S.W.2d 739, 740 (Tex. Crim. App. 1988); King v. State, 17 S.W.3d 7, 20 (Tex. App. – Houston [14[th] Dist.] 2000, pet. ref'd) (stating that "[e]vidence that would have no influence over any consequential fact for the jury's resolution is not relevant").

59

Moreover, the trial court should not have admitted the testimony and evidence due to the fact that the State sought to make an "end run" around the restrictions imposed by Tex. R. Evid. 404(b), in that the State arguably introduced evidence of an extraneous offense. Further, the evidence and testimony did not meet Rule 404(b)'s "laundry list" of exceptions. See <u>Santellan v. State,</u> 939 S.w.2d 155, 168 – 169 (Tex. Crim. App. 1997).

Lastly, the trial court should not have admitted the evidence and testimony due to the fact that said evidence and testimony violated the provisions of Tex. Code Crim. Proc. art. 38. 36(a). The material issues in a homicide case must be based on the theories of the prosecution and the defense. It is the contention of Applicant that the trial court erred in allowing the jury to improperly hear evidence of an extraneous offense and the relationship of the deceased to third parties. See <u>Hernandez v. State,</u> 914 S.W.2d 226, 232 (Tex. App. – Waco 1996, no pet.); <u>Bisby v. State,</u> 907 S.W.2d 949, 957 (Tex. App., Fort Worth 1995, pet. ref'd). Applicant requests that this Court reverse the judgment of the trial court and remand the case with instructions to order a new trial.

## CLAIM NUMER TWENTY-ONE RESTATED

THE TRIAL COURT ERRED IN ADMITTING THE TESTIMONY OF ROYCE SMITHEY AND DR. RICHARD COONS WITH REGARDS TO THE FUTURE DANGEROUSNESS OF APPLICANT BECAUSE THE TESTIMONY VIOLATED HIS RIGHTS UNDER THE EIGHTH AMENDMENT OF THE

UNITED STATES CONSTITUTION AND HIS RIGHTS TO DUE PROCESS AND A FAIR DETERMINATION OF THE DEATH PENALTY. (AS PRESENTED IN APPLICANT'S DIRECT APPEAL)

## STATEMENT OF FACTS AND ARGUMENT
## AND AUTHORITIES UNDER CLAIM NUMBER TWENTY-ONE

Applicant objected to the testimony of Richard Smithey concerning the future dangerousness of Applicant. R. Vol. 1, pp. 178 – 182; R. Vol. 38, pp. 24 – 26. The trial court overruled the objection of Applicant. R. Vol. 38, p. 26. Despite the artful argument of the State proclaiming Smithey was not an expert witness on future dangerousness, Applicant argues that is the way Smithey testified.. R. Vol. 38, pp. 24 - 63.

Smithey's testimony did not meet any of the factors enumerated in the Daubert/Robinson/Kelly line of cases, thus he was not qualified to give an expert opinion. See also Tex. R. Evid. 702, 703, and 705. Further, Smithey's testimony was not individualized as to Applicant, which is required by the Eighth Amendment to the United States Constitution. *Cf. Zant v. Stephens,* 462 U.S. 862, 879 (1983). Lastly, the blanket assertions of Smithey were more prejudicial than probative, were totally irrelevant and were meant only to incite and inflame the jury, which is not permissible under current Texas Jurisprudence. See Wiley v. State, 74 S.W.2d. 841, 846 n. 6 (Tex. Crim. App. 1999). This appellate record reflects that the trial court did not perform its ministerial duty. R. Vol. 38, pp. 24 –

61

Case 5:13-cv-00043   Document 7-2   Filed on 11/14/13 in TXSD   Page 61 of 74

26, 37 – 64.

Applicant objected to the testimony of Dr. Richard Coons concerning the future dangerousness of Applicant.  R. Vol. 178 – 182; V. 38 26 – 36.  The trial court overruled the objection of Applicant.  R. Vol. 38, p. 36.

Cutting straight to the chase, during the Daubert hearing, the State failed to show that Dr. Coons was qualified to give an opinion as to the future dangerousness of Applicant.  A witness is not qualified to give an opinion about future dangerousness under Tex. Crim. App. 1981).  An expert's prediction of future dangerousness is inadmissible if "there is no evidence to technical or scientific support for it."  Id at 501.

For Dr. Coons' testimony, the following requirements must be met:  (1) the expert's testimony must be based on sufficient facts or data, (2) the expert's testimony must be the product of reliable principles and methods, and (3) the expert must apply the principles and methods reliably to the fact of the case.  See Robinson, 923 S.W.2d at 556 – 557;  Kelly, 824 S.W.2d at 571 – 572; Tex. R. Evid 702.  None of Dr. Coons' testimony, during the Daubert hearing and trail on the merits, came close to meeting the above-referenced standard. RR. VOL. 38, pp. 26 – 36; 65 – 84.  Dr. Coons presented no empirical data and/or scientific principles upon which to support his opinions and conclusions.  In short, Dr. Coons'

62

testimony was based solely on supposition and a series of hypotheticals artfully supplied by the State.

Applicant requests that the court reform the death sentence to that of life imprisonment or, in the alternative, reverse the judgment of the trial court and remand the case with instructions to order a new trial. *Cf. Berry v. State,* ___ S.W.3d ___, No. AP-74,913, 2007 WL 1489797, at *10(Tex. Crim. App. May 23, 2007).

### CLAIM NUMER TWENTY-TWO RESTATED

THE EVIDENCE IS LEGALLY AND FACTUALLY INSUFFICIENT TO SUSTAIN THE CONVICTION OF APPLICANT IN VIOLATION OF HIS RIGHT TO DUE PROCESS. (AS PRESENTED IN APPLICANT'S DIRECT APPEAL)

### STATEMENT OF FACTS AND ARGUMENT
### AND AUTHORITIES UNDER CLAIM NUMBER TWENTY-TWO

The significant inculpatory portions of the evidence offered by the State against Applicant were supplied by LeJames Norman and Bradford Butler. R. Vol. 32. It is undisputed and uncontroverted that Norman is an accomplice as a matter of law. Butler should be considered an accomplice as a matter of fact and was so defined in the Charge of the court. RR. Vol. 1, pp. 170 – 171. See <u>Paredes v. State</u>, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004) (Accomplice as a matter of law); <u>Navarro v. State,</u> 863 S..2d 191, 201 (Tex. App. – Austin 1993), *pet. ref'd,*

61

63

Case 5:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 63 of 74

891 S.W.2d 648 (Tex. Crim. App. 1994) (Accomplice as a matter of fact).

Tex. Code Crim. Proc. art. 38.14 succinctly and unambiguously states:

> A conviction cannot be held upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; <u>and the corroboration is not sufficient if it merely shows the commission of the offense.</u>

(Emphasis added)

Further, accomplices are not allowed to corroborate each other's testimony. See <u>Gamez</u>, 737 S.W.2d at 322 – 323; <u>Badillo</u>, 963 S.W.2d at 857. It is the contention of Applicant that the testimony proffered by Norman and Butler is not sufficiently corroborated to sustain the conviction of Applicant.

A court must eliminate all accomplice evidence and determine whether the other inculpatory facts and circumstances in evidence tend to connect Applicant to the offense. See <u>Brown v. State,</u> 672 S.W.2d 487, 488 (Tex. Crim. App. 1984); <u>In re K.B.,</u> 143 S.W.3d 194, 199 (Tex. App. – Waco 2004, no pet.); <u>Torres v. State,</u> 137 S.W.3d 194, 199 (Tex. App. Houston [1st Dist.] 2002, no pet.); <u>Young v. State,</u> 95 S.W.3d 448, 451 (Tex. App. – Houston [1st Dist.] 2002, pet. ref'd). With the elimination of the evidence and testimony supplied by Norman and butler, there is not sufficient corroboration to sustain Applicant's conviction.

The remaining evidence offered against Applicant was factually insufficient. None of the State's plethora of non-accomplice witnesses could place Applicant at

64

the scene nor could they testify that they saw Applicant shoot anybody. There was no testimony by any of the non-accomplice witnesses that Applicant committed burglary of a habitation or that he attempted to commit burglary of a habitation. Moreover, and to repeat, the revolvers that were admitted into evidence were contested as being the weapons that killed any of the decedents that made the basis of this prosecution.

The testimony of Stacy Johnson directly conflicts and does not corroborate the testimony of Norman and Butler as to how and when the decedents were killed. Additionally, Johnson's testimony does not corroborate the forensic evidence concerning the cause of death of the decedents. R. Vol. 31, pp. 205 – 214. The testimony of Otis Santellano directly conflicts and does not corroborate the testimony of Norman and Butler as to how and when the decedents were killed and his testimony also does not corroborate the forensic evidence concerning the cause of death of the decedents. R. Vol. 34 pp. 92 – 125. The testimony of Cortney Hardaway directly conflicts and does not corroborate the testimony of Norman and Butler as to how and when the decedents were killed and his testimony also does not corroborate the forensic evidence concerning the cause of death of the decedents. RR. Vol. 34, pp. 169 – 190.

The great weight and preponderance of the evidence contradicts the jury's

63

65

verdict. See <u>Watson v. State</u>, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).

The evidence proffered against Applicant was legally insufficient to sustain the conviction of Applicant. The indictment in this case charged Applicant in the disjunctive with four ways of committing capital murder. TR, 1, pp. 4 – 5. In evaluating the legal sufficiency of the evidence, the evidence must be viewed in a light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). There has not been any legally sufficient evidence introduced by the State that has proved <u>all</u> of the elements of the offense as contained in paragraphs 1 – 4 of the indictment. Since the State charged Applicant in the disjunctive, the State <u>must</u> prove at least one of the underlying felonies in order to sustain the capital murder conviction of Applicant. See <u>Cardenas,</u> 30 S.W.3d at 389 – 390.

There is no proof beyond a reasonable doubt that Applicant killed Samuel Roberts, Tiffany Peacock or Celso Lopez in any of the ways alleged in the indictment. There is no proof beyond a reasonable doubt that Applicant committed or attempted to commit burglary of a habitation as alleged in the indictment. When the evidence is viewed in a light favorable to the verdict, no rationale trier of fact (the jury) could find the essential elements of the offense beyond a reasonable

64

Case 5:13-cv-00043   Document 7-2   Filed on 11/14/13 in TXSD   Page 66 of 74

doubt. Applicant requests that the court reverse the judgment of the trial court and order an acquittal or, in the alternative, remand the case to the trial court with instructions to order a new trial.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Applicant prays that he be given an evidentiary hearing on these claims; specifically his <u>Batson</u> jury shuffle claim, but not limited thereto, and further prays that this court, after hearing, grant the relief to which Applicant is entitled and order the judgment and sentence in Cause 05-12-7342 in the 24th Judicial District Court of Jackson County, Texas, be set aside and that his sentence of execution be set aside and a new trial be granted, and issue a writ of habeas corpus so that Applicant may be released from his illegal restraint of liberty.

Respectfully submitted,

RICHARD W. ROGERS, III
State Bar No. 17191200
Federal No.4452
1756 Santa Fe
Corpus Christi, Texas  78404
TEL 361/888-7620
FAX 361/888-7619

67

Scanned Apr 06, 2011

# EXCERPTS FROM APPLICANT'S DIRECT APPEAL BRIEF
## IN CAUSE NO. 75,678

68

Case 9:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 68 of 74

jury panel.

After initial qualification, the second venire jury panel was brought before the trial court presiding over trial on the merits. Once the second venire jury panel was seated, and before *voir dire* began, the trial court inquired of the attorneys for the parties whether either side requested a jury shuffle. Due to the large number of Black venire jurors on the first two rows, the Defendant declined to shuffle the second venire jury panel and the State requested a jury shuffle. (21 C.R.R. 11-12.)

After the jury shuffle, a great majority of the Black venire jury members were moved to the back of the panel. Defendant's counsel inquired of the trial

69

Case 5:13-cv-00043  Document 7-2  Filed on 11/14/13 in TXSD  Page 69 of 74

EXCERPTS FROM STATE'S DIRECT APPEAL BRIEF
IN CAUSE NO. 75,678

Case 5:13-cv-00043  Document 7-2  Filed on 11/14/13 in TXSD  Page 70 of 74

## APPELLANT'S ISSUE NO. 1 (RESTATED)

THE STATE PERFORMED A JURY SHUFFLE ON THE SECOND VENIRE PANEL IN AN IMPERMISSIBLE DISCRIMINATORY MANNER.

### SUMMARY OF THE ARGUMENT

Appellant presents nothing for review because there was no objection and there is absolutely nothing in the record to support his factual allegations of discrimination.

71

Case 5:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 71 of 74

The state immediately pointed out to the court that there was no **Batson** claim as to that prospective juror. Examination of the record pertaining to the prospective juror's Steadham-Scott reveals that at the time this prospective juror was excused appellant made no objection and raised no issue as to whether or not the state improperly exercised a peremptory challenge. (S.F. Vol. 29, pp. 79, 80).

72

Scanned  Apr 06, 2011

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing writ of habeas corpus was hand delivered to the office of the Jackson County District Attorney and also to the Texas Court of Criminal Appeals on the 16th day of May, 2008.

RICHARD W. ROGERS, III

# VERIFICATION

## OATH BEFORE A NOTARY

STATE OF TEXAS )

COUNTY OF NUECES )

Richard W. Rogers, III, being first duly sworn, under oath, says: that he is the attorney in this action and knows the content of the above application and according to his belief, the facts stated in the application are true.

_____
Richard W. Rogers, III
Attorney for Applicant

SUBSCRIBED AND SWORN TO before me this _15th_ day of May, 2008.

Margaret Rogers
Notary Public, State of Texas
My Commission Expires:
September 21, 2010

_____
NOTARY PUBLIC, STATE OF TEXAS

74



Case 5:13-cv-00043 Document 7-2 Filed on 11/14/13 in TXSD Page 74 of 74

## VERIFICATION

(Complete __EITHER__ the "oath before a notary public" __OR__ the "inmate's declaration.")

### OATH BEFORE NOTARY PUBLIC

STATE OF TEXAS, COUNTY OF _____.

_____, BEING FIRST DULY SWORN, UNDER OATH,

SAYS: THAT HE/SHE IS THE APPLICANT IN THIS ACTION AND KNOWS THE

CONTENT OF THE ABOVE APPLICATION AND ACCORDING TO APPLICANT'S

BELIEF, THE FACTS STATED IN THE APPLICATION ARE TRUE.

_____
Signature of Applicant

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____.

_____
Signature of Notary Public

### INMATE'S DECLARATION

I, __KER'SEAN RAMEY__, BEING PRESENTLY
INCARCERATED IN __Polunsky Unit (Death row)__, DECLARE UNDER
PENALTY OF PERJURY THAT, ACCORDING TO MY BELIEF, THE FACTS STATED IN
THE APPLICATION ARE TRUE AND CORRECT.

SIGNED ON __5/13/08__.

X _Ker'Sean Ramey_
Signature of Applicant

Filed __May 19__ 20_08_        11

At __10:17__ AM/PM

_Sharon Mathis_
Clerk, District Court, Jackson County, Texas

75